ZIMMERMAN REED LLP
Caleb Marker (SBN 207433)
 caleb.marker@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

Jeffrey Harrington (*pro hac vice forthcoming*)
 jeffrey.harrington@zimmreed.com
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400 Telephone

Molly Billion (*pro hac vice forthcoming*)
 molly.billion@zimmreed.com
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400 Telephone

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WONG, TERI SMITH, CHRISTOPHER FLETCHER, JAMES SHANNON, KEVIN ADLER, SAM FLEISCHER, ANTHONY BOBECK, SAM ABBASSI, and ARCHIE SANTOS DIAZ, individually and on behalf of all others similarly situated, | CASE NO.: 3:24-CV-00779 |
| | *Assigned to the Honorable* |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | 1. Violation of the Video Protection Privacy Act |
| | 2. Violation of Cal. Civ. Code § 1799.3 |
| MLB ADVANCED MEDIA, L.P. and DOES 1 through 50, inclusive, | 3. Violation of the California Invasion of Privacy Act |
| | 4. Violation of the California Unfair Competition Law |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiffs Eric Wong, Teri Smith, Christopher Fletcher, James Shannon, Kevin Adler, Sam Fleischer, Anthony Bobeck, Sam Abbassi, and Archie Santos Diaz (collectively, "Plaintiffs"), by and through their attorneys, bring this action against Defendant MLB Advanced Media, L.P. ("Defendant" or "MLB") and allege, upon personal knowledge, their attorneys' reasonable investigations, and on information and belief as follows:

## INTRODUCTION

1.     Plaintiffs are subscribers of Defendant's website, MLB.com (the "Website"), which offers, among other things, a wide array of prerecorded audio visual materials and services.

2.     When Plaintiffs requested or obtained specific video materials or services on Defendant's Website, Defendant knowingly disclosed Plaintiffs' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta"), which owns and operates social media networks including Facebook and Instagram, without notifying Plaintiffs and without their consent.

3.     Defendant violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, each time it knowingly disclosed Plaintiffs' PII to Meta without their consent.

4.     Defendant is liable to Plaintiffs and the Class for statutory damages in an amount not less than $2,500 for each disclosure of PII and attorneys' fees and costs.

## PARTIES

5.     Plaintiff Eric Wong is an individual over 18 years old and a citizen of San Mateo County, California. Plaintiff Wong is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

6.     Plaintiff Teri Smith is an individual over 18 years old and a citizen of Napa County, California. Plaintiff Smith is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

7.     Plaintiff Christopher Fletcher is an individual over 18 years old and a citizen of San Francisco County, California. Plaintiff Fletcher is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

8. Plaintiff James Shannon is an individual over 18 years old and a citizen of Alameda County, California. Plaintiff Shannon is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

9. Plaintiff Kevin Adler is an individual over 18 years old and a citizen of San Francisco County, California. Plaintiff Adler is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

10. Plaintiff Sam Fleischer is an individual over 18 years old and a citizen of Alameda County, California. Plaintiff Fleischer is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

11. Plaintiff Anthony Bobeck is an individual over 18 years old and a citizen of Santa Clara County, California. Plaintiff Abbassi is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

12. Plaintiff Sam Abbassi is an individual over 18 years old and a citizen of San Francisco County, California. Plaintiff Abbassi is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

13. Plaintiff Archie Santos Diaz is an individual over 18 years old and a citizen of San Francisco County, California. Plaintiff Santos Diaz is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

14. Defendant MLB Advanced Media, L.P. is a limited partnership with a principal place of business at 1271 Avenue of the Americas, New York, NY 10020. Defendant developed, maintains, owns, and/or operates the Website.

15. Plaintiffs do not know the true names and capacities of the Defendants sued herein as DOES 1 through 50 ("DOE Defendants"), inclusive, and therefore sue said DOE Defendants by these fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

16. Plaintiff alleges that DOES 1 through 50 are, and were at all relevant times, agents, employees, or partners of Defendant MLB Advanced Media, L.P. Upon information and belief, DOE

Defendants include the teams of Major League Baseball, five of which are located in and citizens of the State of California, and/or their owners, agents, or employees.

<u>**JURISDICTION AND VENUE**</u>

17.     This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA").[1] 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is diversity in citizenship between the parties, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interests and costs.

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA. This Court further has jurisdiction to hear Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as the claims are so related to the VPPA claims in the action such that they form part of the same case or controversy.

19.     This Court has personal jurisdiction over Defendant because it is registered and regularly conducts business, including entering into transactions with consumers, in this District. Further, this Court has personal jurisdiction over Defendant because Defendant's unlawful conduct occurred in, was directed to, and emanated from this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in, was directed to, and emanated from this District.[2]

---

[1] The applicable Terms of Use, attached hereto as Exhibit A, contains a Class Action Waiver that attempts to waive Plaintiffs' right to bring their claims in a Class Action. *See Terms of Use Agreement*, MLB.com, https://www.mlb.com/official-information/terms-of-use (last updated Feb. 6, 2024). However, this standalone Class Action Waiver, unconnected to an applicable arbitration clause, is unconscionable and unenforceable under California law. *See Suski v. Marden-Kane, Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, at *4 (N.D. Cal. Aug. 31, 2022) ("[W]here, as here, a class action waiver is not coupled with an arbitration provision, California law on unconscionability applies."); *see also Discover Bank v. Superior Ct.*, 36 Cal. 4th 148, 153 (2005), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("[W]e conclude that, at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration.").

[2] The applicable Terms of Use, attached hereto as Exhibit A, contains a Venue section with a forum selection clause purporting to require Plaintiffs to bring their claims in a New York forum. The Terms

## **GENERAL ALLEGATIONS**

21.     Defendant is engaged in the business of the rental, sale, or delivery of pre-recorded audio visual materials. MLB states that its paid subscription service, MLB.TV, provides "an expanded library of premium content, including documentaries, classic programs and World Series Films." The Website is also home to "MLB Original" videos and videos from "MLB Network."

22.     Defendant developed, owns, and/or operates the Website. The Website provides a wide array of prerecorded audio visual materials (*e.g.*, videos) and/or services.

23.     Defendant has millions of subscribers who, among other things, request or obtain specific prerecorded audio visual video materials or services from the Website.

24.     To become a subscriber of the Website, individuals create an account by providing PII, such as their name, date of birth, and email address. MLB.TV subscribers also pay a subscription fee.

25.     Meta owns and operates Facebook, the world's largest social media platform.[3]

26.     To create a Facebook account, individuals must use "the name they go by in everyday life,"[4] such that a person can be personally identified by their Facebook account.

27.     When someone creates a Facebook account, a corresponding unique Facebook ID ("FID") is also created.

28.     FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile. Accordingly, FIDs are PII.

---

of Use also contains a Jury Trial Waiver and Class Action Waiver. However, the New York forum selection clause is invalid and unenforceable as contrary to California's fundamental public policy protecting the right to a jury trial. *See In re Cnty. of Orange*, 784 F.3d 520, 532 (9th Cir. 2015) ("California law holds, as a matter of public policy, that a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause."); *Handoush v. Lease Fin. Grp., LLC*, 41 Cal. App. 5th 729, 741 (2019) (concluding that "the trial court erred in enforcing the forum selection clause in favor of a New York forum where the clause includes a predispute jury trial waiver"). In addition, the New York forum selection clause is invalid and unenforceable as contrary to California's fundamental public policy protecting consumers' right to bring class actions under certain circumstances. *See supra* note 1.

[3] Belle Wong & Cassie Bottorff, *Top Social Media Statistics and Trends of 2024*, FORBES (May 18, 2023), https://www.forbes.com/advisor/business/social-media-statistics.

[4] *Account Integrity and Authentic Identity*, META, https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity (last visited Feb. 8, 2024).

29.     Defendant monetizes its Website by, among other things, knowingly collecting and disclosing its subscribers' PII to Meta, including data that personally identifies subscribers and the specific prerecorded audio visual materials or services they request or obtain.

30.     Defendant's Website uses a computer code analytics tool called the "Meta Pixel" ("Pixel"), which was installed and implemented at the discretion of Defendant.

31.     Meta created the Pixel fundamentally as an advertising tool that allows website owners to track visitor information, traffic, and other actions on the owner's website. The Pixel collects visitor information and transmits it back to Meta. Website owners integrate the Pixel onto their webpage to market their products, goods, and services more effectively across Meta's platforms, including Facebook and Instagram.

32.     The Pixel enables Meta to "match [an owner's] website visitors to their respective Facebook User accounts."[5] Meta states that, "[o]nce matched, [Meta] can tally [visitor] actions in the Facebook Ads Manager so [a website owner] can use the data to analyze [their] website's conversion flows and optimize [their] ad campaigns."[6]

33.     The Pixel tracks the actions of Defendant's Website visitors, including subscribers, such as the specific prerecorded audio visual materials or services they request or obtain.

34.     Developers and marketers, such as Defendant, can optionally choose to send information that is collected by the Pixel.[7]

35.     Defendant affirmatively installed the Pixel on the Website and configured the Pixel to specifically transmit a subscriber's PII and the prerecorded audio visual video materials or services they request or obtain to Meta.

---

[5] *Get Started*, META FOR DEVELOPERS, https://developers.facebook.com/docs/meta-pixel/get-started (last visited Feb. 8, 2023).
[6] *Id.*
[7] *Meta Pixel*, META FOR DEVELOPERS, https://developers.facebook.com/docs/meta-pixel (last visited Feb. 8, 2023) ("We don't capture field values unless you include them as part of Advanced Matching or optional values.").

36. When someone requests or obtains specific prerecorded audio visual materials or services on the Website, the specific audio visual material or service and the viewer's FID are simultaneously disclosed to Meta via the Pixel.

37. Defendant knew that the specific audio visual material or service requested or obtained and the viewer's FID are simultaneously disclosed to Meta via the Pixel.

38. Defendant did not obtain the consent of Website subscribers to disclose their PII or the specific video materials or services they request or obtain.

39. The surreptitious disclosure of PII paired with the specific video materials or services that a person requests or obtains is an outrageous invasion of privacy and would be offensive to a reasonable person.

## PROPOSED CLASS REPRESENTATIVES

### Eric Wong

40. During the relevant time period, Plaintiff Wong had an active subscription to Defendant's Website.

41. To become a subscriber to the Website, Plaintiff Wong provided Defendant with his name and email address.

42. Among other means, Plaintiff Wong uses web browsers to access the Website.

43. As part of his subscription, Plaintiff Wong regularly requested or obtained specific video materials or services from the Website.

44. Plaintiff Wong has a Facebook account, which he is perpetually logged into on his computer and smartphone.

45. Plaintiff Wong's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Wong's Facebook profile and email address contain his name, Plaintiff Wong can be personally identified by that information.

46. Each time Plaintiff Wong requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Wong's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

47. This paired information personally identifies Plaintiff Wong and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

48. Plaintiff Wong did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Wong's consent in a form separate and distinct from other legal or financial obligations.

49. Defendant did not provide Plaintiff Wong with an opportunity to withdraw from the disclosure of his PII.

**Teri Smith**

50. During the relevant time period, Plaintiff Smith had an active subscription to Defendant's Website.

51. To become a subscriber to the Website, Plaintiff Smith provided Defendant with her name and email address.

52. Among other means, Plaintiff Smith uses web browsers to access the Website.

53. As part of her subscription, Plaintiff Smith regularly requested or obtained specific video materials or services from the Website.

54. Plaintiff Smith has a Facebook account, which she is perpetually logged into on her computer and smartphone.

55. Plaintiff Smith's Facebook profile is associated with her real (legal) name and email address. Because Plaintiff Smith's Facebook profile and email address contain her name, Plaintiff Smith can be personally identified by that information.

56. Each time Plaintiff Smith requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Smith's FID and the specific video materials or services she requested or obtained from Defendant to Meta via the Pixel.

57. This paired information personally identifies Plaintiff Smith and the video materials that she requested, obtained, accessed, and/or watched on Defendant's Website.

58. Plaintiff Smith did not consent to the disclosure of her PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Smith's consent in a form separate and distinct from other legal or financial obligations.

59.     Defendant did not provide Plaintiff Smith with an opportunity to withdraw from the disclosure of her PII.

**Christopher Fletcher**

60.     During the relevant time period, Plaintiff Fletcher had an active subscription to Defendant's Website.

61.     To become a subscriber to the Website, Plaintiff Fletcher provided Defendant with his name and email address.

62.     Among other means, Plaintiff Fletcher uses web browsers to access the Website.

63.     As part of his subscription, Plaintiff Fletcher regularly requested or obtained specific video materials or services from the Website.

64.     Plaintiff Fletcher has a Facebook account, which he is perpetually logged into on his computer and smartphone.

65.     Plaintiff Fletcher's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Fletcher's Facebook profile and email address contain his name, Plaintiff Fletcher can be personally identified by that information.

66.     Each time Plaintiff Fletcher requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Fletcher's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

67.     This paired information personally identifies Plaintiff Fletcher and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

68.     Plaintiff Fletcher did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Fletcher's consent in a form separate and distinct from other legal or financial obligations.

69.     Defendant did not provide Plaintiff Fletcher with an opportunity to withdraw from the disclosure of his PII.

**James Shannon**

70.     During the relevant time period, Plaintiff Shannon had an active subscription to Defendant's Website.

71. To become a subscriber to the Website, Plaintiff Shannon provided Defendant with his name and email address.

72. Among other means, Plaintiff Shannon uses web browsers to access the Website.

73. As part of his subscription, Plaintiff Shannon regularly requested or obtained specific video materials or services from the Website.

74. Plaintiff Shannon has a Facebook account, which he is perpetually logged into on his computer and smartphone.

75. Plaintiff Shannon's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Shannon's Facebook profile and email address contain his name, Plaintiff Shannon can be personally identified by that information.

76. Each time Plaintiff Shannon requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Shannon's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

77. This paired information personally identifies Plaintiff Shannon and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

78. Plaintiff Shannon did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Shannon's consent in a form separate and distinct from other legal or financial obligations.

79. Defendant did not provide Plaintiff Shannon with an opportunity to withdraw from the disclosure of his PII.

**Kevin Adler**

80. During the relevant time period, Plaintiff Adler had an active subscription to Defendant's Website.

81. To become a subscriber to the Website, Plaintiff Adler provided Defendant with his name and email address.

82. Among other means, Plaintiff Adler uses web browsers to access the Website.

83. As part of his subscription, Plaintiff Adler regularly requested or obtained specific video materials or services from the Website.

84.     Plaintiff Adler has a Facebook account, which he is perpetually logged into on his computer and smartphone.

85.     Plaintiff Adler's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Adler's Facebook profile and email address contain his name, Plaintiff Adler can be personally identified by that information.

86.     Each time Plaintiff Adler requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Adler's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

87.     This paired information personally identifies Plaintiff Adler and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

88.     Plaintiff Adler did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Adler's consent in a form separate and distinct from other legal or financial obligations.

89.     Defendant did not provide Plaintiff Adler with an opportunity to withdraw from the disclosure of his PII.

### Sam Fleischer

90.     During the relevant time period, Plaintiff Fleischer had an active subscription to Defendant's Website.

91.     To become a subscriber to the Website, Plaintiff Fleischer provided Defendant with his name and email address.

92.     Among other means, Plaintiff Fleischer uses web browsers to access the Website.

93.     As part of his subscription, Plaintiff Fleischer regularly requested or obtained specific video materials or services from the Website.

94.     Plaintiff Fleischer has a Facebook account, which he is perpetually logged into on his computer and smartphone.

95.     Plaintiff Fleischer's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Fleischer's Facebook profile and email address contain his name, Plaintiff Fleischer can be personally identified by that information.

96.     Each time Plaintiff Fleischer requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Fleischer's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

97.     This paired information personally identifies Plaintiff Fleischer and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

98.     Plaintiff Fleischer did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Fleischer's consent in a form separate and distinct from other legal or financial obligations.

99.     Defendant did not provide Plaintiff Fleischer with an opportunity to withdraw from the disclosure of his PII.

**Anthony Bobeck**

100.     During the relevant time period, Plaintiff Bobeck had an active subscription to Defendant's Website.

101.     To become a subscriber to the Website, Plaintiff Bobeck provided Defendant with his name and email address.

102.     Among other means, Plaintiff Bobeck uses web browsers to access the Website.

103.     As part of his subscription, Plaintiff Bobeck regularly requested or obtained specific video materials or services from the Website.

104.     Plaintiff Bobeck has a Facebook account, which he is perpetually logged into on his computer and smartphone.

105.     Plaintiff Bobeck's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Bobeck's Facebook profile and email address contain his name, Plaintiff Bobeck can be personally identified by that information.

106.     Each time Plaintiff Bobeck requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Bobeck's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

107.     This paired information personally identifies Plaintiff Bobeck and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

108. Plaintiff Bobeck did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Bobeck's consent in a form separate and distinct from other legal or financial obligations.

109. Defendant did not provide Plaintiff Bobeck with an opportunity to withdraw from the disclosure of his PII.

**Sam Abbassi**

110. During the relevant time period, Plaintiff Abbassi had an active subscription to Defendant's Website.

111. To become a subscriber to the Website, Plaintiff Abbassi provided Defendant with his name and email address.

112. Among other means, Plaintiff Abbassi uses web browsers to access the Website.

113. As part of his subscription, Plaintiff Abbassi regularly requested or obtained specific video materials or services from the Website.

114. Plaintiff Abbassi has a Facebook account, which he is perpetually logged into on his computer and smartphone.

115. Plaintiff Abbassi's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Abbassi's Facebook profile and email address contain his name, Plaintiff Abbassi can be personally identified by that information.

116. Each time Plaintiff Abbassi requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Abbassi's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

117. This paired information personally identifies Plaintiff Abbassi and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

118. Plaintiff Abbassi did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Abbassi's consent in a form separate and distinct from other legal or financial obligations.

119. Defendant did not provide Plaintiff Abbassi with an opportunity to withdraw from the disclosure of his PII.

**Archie Santos Diaz**

120. During the relevant time period, Plaintiff Santos Diaz had an active subscription to Defendant's Website.

121. To become a subscriber to the Website, Plaintiff Santos Diaz provided Defendant with his name and email address.

122. Among other means, Plaintiff Santos Diaz uses web browsers to access the Website.

123. As part of his subscription, Plaintiff Santos Diaz regularly requested or obtained specific video materials or services from the Website.

124. Plaintiff Santos Diaz has a Facebook account, which he is perpetually logged into on his computer and smartphone.

125. Plaintiff Santos Diaz's Facebook profile is associated with his real (legal) name and email address. Because Plaintiff Santos Diaz's Facebook profile and email address contain his name, Plaintiff Santos Diaz can be personally identified by that information.

126. Each time Plaintiff Santos Diaz requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Santos Diaz's FID and the specific video materials or services he requested or obtained from Defendant to Meta via the Pixel.

127. This paired information personally identifies Plaintiff Santos Diaz and the video materials that he requested, obtained, accessed, and/or watched on Defendant's Website.

128. Plaintiff Santos Diaz did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Santos Diaz's consent in a form separate and distinct from other legal or financial obligations.

129. Defendant did not provide Plaintiff Santos Diaz with an opportunity to withdraw from the disclosure of his PII.

# CLASS ALLEGATIONS

**A.    Definition of the Class**

130.    Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23 (the "Class"). Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All persons in the United States who (1) have a Facebook account, (2) subscribed to mlb.com, and (3) requested or obtained specific video materials or services from mlb.com.**

131.    Plaintiffs also seek to represent a subclass consisting of Class members who reside in the State of California (the "Subclass") and preliminarily defined as:

> **All persons who reside in the State of California who (1) have a Facebook account, (2) subscribed to mlb.com, and (3) requested or obtained specific video materials or services from mlb.com.**

132.    These definitions are subject to modification as discovery discloses further information. Plaintiffs reserve the right to propose additional subclasses if discovery reveals that such subclasses are appropriate.

133.    Excluded from the Class and Subclass are Defendant, its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns, and any entity in which it has a controlling interest, as well as all judicial officers assigned to this case, as defined in 28 U.S.C. § 455(b) and their immediate families.

134.    This case is properly maintainable as a class action pursuant to and in accordance with Federal Rule of Civil Procedure 23 in that:

    a.    The Class and Subclass, which include thousands of members, are so numerous that joinder of all Class Members is impracticable;

    b.    There are substantial questions of law and fact common to the Class and Subclass, including those set forth in greater particularity herein;

    c.    Questions of law and fact, such as those enumerated below, which are common to the Class and Subclass, predominate over any questions of law or fact affecting only individual members of the Class and Subclass;

d. The claims of the representative parties are typical of the claims of the Class and Subclass;

e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class and Subclass (collectively, "Class Members");

g. The prosecution of separate lawsuits by members of the Class and Subclass would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

h. There are no unusual difficulties foreseen in the management of this class action; and

i. Plaintiffs, whose claims are typical of those of the Class and Subclass, through their experienced counsel, will zealously and adequately represent the Class and Subclass.

**B.     Numerosity**

135.    There are millions of individuals who are subscribers of Defendant and have requested or obtained specific video materials or services from Defendant's Website. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

**C.     Commonality**

136.    Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

a. Whether Defendant collected PII of Class Members who visited the Website;

b. Whether Defendant discloses PII of Class Members who requested or obtained specific video materials or services from the Website;

c. Whether Defendant's disclosure was made knowingly;

d. The nature and extent of PII disclosed;

e. How PII was disclosed and to whom;

f. Whether Defendant's Website obtains informed written consent in a form distinct and separate from any form setting forth other legal or financial obligations before disclosing PII of subscribers; and

g. Whether Defendant's Website provides a clear and conspicuous opportunity for subscribers to withdraw from disclosures on a case-by-case basis.

**D.     Typicality**

137.    Plaintiffs have the same interests in this matter as all other Class Members and their claims are typical of the claims of all Class Members. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (*e.g.*, expert testimony), rely upon the same legal theories, and seek the same type of relief.

138.    The claims of the Plaintiffs and other Class Members have a common cause and their damages are of the same type. The claims originate from the disclosure of PII by Defendant without consent.

139.    All Class Members have been aggrieved by Defendant's disclosure of their PII without consent and are entitled to, *inter alia*, statutory damages.

**E.     Adequacy of Representation**

140.    Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the claims of the Class and Subclass will be prosecuted with diligence and care by Plaintiffs as representatives of the Class and Subclass. Plaintiffs will fairly and adequately represent the interests of the Class and Subclass and do not have interests adverse to the Class or Subclass.

141.    Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

**F.     Class Treatment is the Superior Method of Adjudication**

142.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b. Individual claims by Class Members would create a risk of inconsistent or varying adjudication, which would present Defendant with incompatible standards of conduct;

c. Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Member are unlikely to have an interest in separately prosecuting and controlling individual actions;

e. In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f. The Plaintiffs seek relief relating to Defendant's common actions, and the equitable relief sought would commonly benefit the Class as a whole;

g. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

h. The proposed class action is manageable.

## COUNT I

### Violation of the Video Privacy Protection Act ("VPPA")

### 18 U.S.C. § 2710

### (On Behalf of the Class and the California Subclass)

143. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

144. Congress enacted the VPPA in 1988 to protect video viewing history records following the release of video rental records of Supreme Court Justice Nominee Robert H. Bork and his family. Congress sought to explicitly preserve United States citizens' right to privacy in their video viewing history.

145.    Upon introduction of the VPPA, Senator Paul Simon noted:

There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.

S. Rep. No. 100-599, at 6–7.

146.    Additional senators remarked that "the trail of information generated by every transaction is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599, at 7.

147.    The VPPA prohibits any video tape service provider from knowingly and disclosing personally identifiable information without informed consent. 18 U.S.C. § 2710(a)–(b).

148.    Defendant is a "video tape service provider" as defined by the VPPA because it engages in the business of renting, selling, and delivering prerecorded audio visual materials (*e.g.*, videos) to the Plaintiffs and Class Members in multiple states and across borders. *See* 18 U.S.C. § 2710(a)(1).

149.    Under the VPPA, a "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

150.    Plaintiffs are "consumers" as defined by the VPPA because they subscribe to and enroll in memberships to gain access to prerecorded videos and similar audio visual materials available on Defendant's website. Plaintiffs subscribed to and subsequently viewed various audio visual materials available on Defendant's Website.

151.    "Personally identifiable information" includes "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

152.    Under the VPPA, "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer, and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period

of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. 18 U.S.C. § 2710(b)(2)(B).

153. Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, among other things, statutory damages in an amount not less than $2,500 and attorneys' fees and costs. 18 U.S.C. § 2710(c)(2)((A)–(D).

154. When Plaintiffs and the Class Members requested or obtained specific video materials or services from Defendant's Website, Defendant knowingly disclosed their FIDs and the specific video materials or services requested or obtained to Meta via the Pixel.

155. Plaintiffs did not consent—written or otherwise—to Defendant disclosing their PII.

156. Defendant did not provide an opportunity for Plaintiffs and the Class to withdraw from the disclosure of their PII.

157. Defendant is liable to Plaintiffs and the Class for statutory damages of not less than $2,500 for each disclosure of their PII. In addition, Plaintiffs, on behalf of themselves and the general public are entitled to injunctive relief, declaratory relief, reasonable attorneys' fees and costs, and all other relief available at law or equity.

## COUNT II

### Violation of Cal. Civ. Code § 1799.3

### (On Behalf of the California Subclass)

158. Plaintiffs incorporate all proceeding paragraphs by reference as if fully set forth herein.

159. California Civil Code section 1799.3 prohibits any "person providing video recording sales or rental services" from disclosing "any personal information or the contents of any record, including sales or rental information…without written consent." Cal. Civ. Code § 1799.3(a).

160. Under California Civil Code section 1799, "person" includes "any natural person, corporation, partnership, limited liability company, firm, association, or governmental entity." Cal. Civ. Code § 1799(d). Defendant is a "person video recording sales or rental services" as defined by Civil Code section 1799.3 because it is engaged in the sale or rental of video recordings.

161. When Plaintiffs and the Class Members requested or obtained video materials from Defendant's Website, Defendant knowingly disclosed their personal information (*i.e.*, their FIDs) and

the video sale or rental information to Meta via the Pixel. This knowing disclosure constitutes a willful violation of California Civil Code section 1799.3.

162. Plaintiffs did not consent—written or otherwise—to Defendant disclosing this personal information and the records of their video sale or rental information.

163. Defendant is liable to Plaintiffs and the Class for civil penalties of up to $500 for each violation, with an additional $500 penalty per violation where three or more violations were committed against a Plaintiff or Class Member within any six-month period. *See* Cal. Civ. Code § 1799.3(d)(1). In addition, Plaintiffs, on behalf of themselves and the general public are entitled to injunctive relief, declaratory relief, reasonable attorneys' fees and costs, and all other relief available at law or equity.

## COUNT III

### Violation of the California Invasion of Privacy Act ("CIPA")

### Cal. Penal Code §§ 630 *et seq.*

### (On Behalf of the California Subclass)

164. Plaintiffs incorporate all proceeding paragraphs by reference as if fully set forth herein.

165. CIPA outlines liability whereby a person, "by means of any machine, instrument, contrivance, or in any other manner," commits any of the following to another person: (i) intentionally tapped, or made by unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, cable, or instrument of any internal telephonic communication system, or (ii) willfully and without consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state; or (iii) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or (iv) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section. Cal. Penal Code § 631(a).

166. Courts have determined that section 631(a) applies to communications conducted over the internet. *See, e.g., Yoon v. Lululemon U.S.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. Jul. 15, 2021).

167. The Ninth Circuit has confirmed that one of the purposes of wiretapping statutes is to "prevent the acquisition of the contents of a message by an unauthorized third-party…." *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020). The California Supreme Court has similarly concluded in regard to CIPA that the objective of the Act is to protect a person's communications from a situation where the other person on the other end of the line permits an outsider to monitor the communication. *See Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985); *see also Smith v. LoanMe*, 11 Cal. 5th 183, 200 (2021).

168. California Penal Code section 637.2 provides a private right of action for violations of CIPA so that "[a] person who has been injured by a violation of [CIPA] may bring an action against the person who committed the violation."

169. As Defendant conducts business in California, California law governs their relationship with Subscribers from California.

170. The Website, including the Pixel installed on it, is a "machine, instrument, contrivance, or…other manner" used to engage in the prohibited conduct at issue here.

171. Within the relevant time period, Plaintiffs used the Website, and their private video viewing history and other video viewing data was communicated to Meta via the Pixel.

172. Within the relevant time period, Meta, without the consent of all parties to the communication, and without proper consent, willfully read or attempted to read or learn the contents or meaning of Plaintiffs' communications, contemporaneous with the communications transit through or passing over any wire, line or cable or with the communications sending from or being received at any place within California.

173. Within the relevant time period, Meta willfully learned or attempted to learn the contents of Plaintiffs' video viewing histories between Plaintiffs and Defendant, through the Website.

174. Within the relevant time period, Defendant aided, agreed with, conspired with, and employed Meta to implement the Pixel and to accomplish the wrongful conduct outlined here.

175. This conduct violates sections 631 and 632 as an invasion of privacy sufficient to confer Article III standing.

176. Plaintiffs did not authorize or consent to the tracking interception, and collection of any of their electronic communications, in the form of their PII.

177. Defendant is liable to Plaintiffs and the Class for statutory damages of not less than $5,000 for each violation of CIPA. In addition, Plaintiffs, on behalf of themselves and the general public are entitled to injunctive relief, declaratory relief, reasonable attorneys' fees and costs, and all other relief available at law or equity.

## COUNT IV

### Violation of the Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (On Behalf of the California Subclass)

178. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

179. The UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, prohibits unfair, unlawful, and fraudulent business practices and acts.

180. Defendant violated the UCL's unfair prong by repeatedly disclosing the personal information of Plaintiffs and the Class with Meta without consent, as alleged above.

181. Defendant's disclosure of the personal information of Plaintiffs and the Class constitutes an "unfair" business practice because it offends an established public policy, as reflected in the VPPA, California Civil Code section 1799.3, and CIPA, and because it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

182. Defendant violated the UCL's unlawful prong by repeatedly sharing its subscribers' personal information with Meta without consent, as alleged above.

183. The UCL covers a wide range of conduct, embracing "anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed*

*Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). The UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Id.*

184.    Defendant's above-described conduct violates the unlawful prong of the UCL, as reflected in the VPPA, California Civil Code section 1799.3, and CIPA.

185.    Plaintiffs suffered an injury in fact and lost money or property as a result of Defendant's practice of disclosing their personal information in that Plaintiffs paid more in subscription fees than they would have had they been previously aware of Defendant's unfair and unlawful business practice.

186.    Had Defendant obtained Plaintiffs' consent to disclose their PII—in the distinct and separate form as required by the VPPA—Plaintiffs would have been aware of this practice.

187.    A reasonable consumer would deem Defendant's disclosure of their personal information to Meta material in determining whether to pay for or how much to pay for a subscription to the Website because it implicates their right to personal privacy. Likewise, a reasonable consumer would value the video materials and services offered through the Website less if they were aware that Defendant disclosed subscriber personal information to Meta.

188.    The difference between what Plaintiffs paid for a subscription to the Website and what they would have been willing to pay had they been aware of Defendant's practice of disclosing personal information constitutes economic injury.

189.    As a result of the foregoing, Plaintiffs individually are entitled to monetary relief (restitution) in an amount to be established. In addition, Plaintiffs, on behalf of themselves and the general public are entitled to injunctive relief, declaratory relief, reasonable attorneys' fees and costs, and all other relief available at law or equity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request relief as follows on all counts:

1.    For an order declaring that Defendant's actions, as set out above, violate the VPPA, 18 U.S.C. § 2710;

2.    For an order declaring that Defendant's actions, as set out above, violate California Civil Code section 1799.3;

3.  For an order declaring that Defendant's actions, as set out above, violate CIPA, Cal. Penal Code §§ 630 *et seq*;

4.  For an order declaring that Defendant's actions, as set out above, violate the UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq*;

5.  Awarding injunctive and other equitable relief as necessary to protect the interest of Plaintiffs and Class Members, including, *inter alia*, an order prohibit Defendant from engaging in the wrongful and unlawful acts described herein;

6.  Awarding restitution and damages, including statutory damages of $2,500 per violation of the VPPA and $5,000 per violation of CIPA, in an amount to be determined at trial;

7.  Awarding civil penalties of $500 per violation of California Civil Code section 1799.3, and up to $1,000 where three or more violations occurred within any six-month period;

8.  Awarding Plaintiffs and Class Members their reasonable attorney's fees and other litigation expenses;

9.  Awarding Plaintiffs and Class Members pre- and post-judgment interest, to the extent allowable; and

10. Awarding such other and further relief as the Court deems just and proper and to which Plaintiffs and Class Members may be entitled.

## **REQUEST FOR JURY TRIAL**

Plaintiffs request a trial by jury of all issues so triable. [8]

Respectfully submitted,

ZIMMERMAN REED LLP

Date: February 8, 2024          By:     /s/ Caleb Marker
                                        Caleb Marker
                                        6420 Wilshire Blvd., Suite 1080
                                        Los Angeles, CA 90048
                                        Tel: (877) 500-8780

---

[8] The applicable Terms of Use, attached hereto as Exhibit A, contains a Jury Trial Waiver that attempts to waive Plaintiffs' right to a jury trial. However, "California law holds, as a matter of public policy, that a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause." *In re Cnty. of Orange*, 784 F.3d at 532.

Fax: (877) 500-8781
caleb.marker@zimmreed.com


ZIMMERMAN REED LLP

Jeffrey Harrington (*pro hac vice forthcoming*)
Molly Billion (*pro hac vice forthcoming*)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
jeffrey.harrington@zimmreed.com
molly.billion@zimmreed.com

*Attorneys for Plaintiffs*