ZIMMERMAN REED LLP
Caleb Marker (SBN 269721)
caleb.marker@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

Jeffrey Harrington (*pro hac vice*)
jeffrey.harrington@zimmreed.com
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

Molly Billion (*pro hac vice*)
molly.billion@zimmreed.com
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ERIC WONG, TERI SMITH, CHRISTOPHER FLETCHER, JAMES SHANNON, KEVIN ADLER, SAM FLEISCHER, ANTHONY BOBECK, SAM ABBASSI, and ARCHIE SANTOS DIAZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MLB ADVANCED MEDIA, L.P. and DOES 1 through 50, inclusive,

Defendants.

CASE NO. 3:24-cv-00779-LB

*Assigned to Magistrate Judge Laurel Beeler*

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER, TO DISMISS, AND TO STRIKE CLASS ALLEGATIONS**

Date: December 19, 2024
Time: 9:30 AM
Courtroom: B – 15th Floor

Date Action Filed: February 8, 2024
Trial Date: TBD

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 3

I. MOTION TO TRANSFER VENUE ..... 3

A. Legal Standard ..... 3

1. The Enforceability of the Forum Selection Clause is Analyzed Under Both State and Federal Law. ..... 3

2. The Enforceability of a Forum Selection Clause is Considered in Tandem with the Choice of Law Clause. ..... 4

3. The Party Seeking Enforcement of a Forum Selection Clause Has the Burden to Show That a Plaintiff's Unwaivable Rights Will Not Be Diminished. ..... 7

B. MLBAM's Motion to Transfer Venue Must Be Denied ..... 8

1. The Forum Selection Clause Is Unconscionable Under California Law. ..... 8

2. The Forum Selection Clause is Also Unenforceable Under Federal Law. ..... 11

i. Enforcement of the combined forum selection clause and choice of law provision would likely result in an application of New York law by a New York court. ..... 11

ii. A New York Court Applying New York Consumer Law Would Violate the CLRA's Anti-Waiver Provision. ..... 12

iii. A New York Court Applying New York Law Would Violate California's Strong Public Policy Against Class Action Waivers. ..... 14

iv. A New York Court Applying New York Law Would Violate California's Unwaivable Right to a Jury Trial. ..... 15

II. MOTION TO DISMISS ..... 17

A. Legal Standard ..... 17

B. MLBAM's MOTION TO DISMISS MUST BE DENIED ..... 17

1. Plaintiffs' Complaint States a Claim Under the VPPA ..... 17

i. Plaintiffs have sufficiently pleaded that they are "consumers." ..... 17

ii. Plaintiffs have sufficiently pled that MLBAM unlawfully disclosed their PII to a third party. ..... 19

2. Plaintiffs Sufficiently Pleaded a Claim Under § 1799.3. ... 20

3. Plaintiffs Sufficiently Pleaded a Claim Under CIPA ... 21

4. Plaintiffs Sufficiently Pleaded a Claim Under the UCL ... 22

5. Plaintiffs Sufficiently Pleaded a Claim Under the CLRA ... 23

III. MOTION TO STRIKE ... 23

A. The Motion to Strike is Premature. ... 24

B. The Class Action Waiver is Unenforceable Under California Law. ... 24

C. The Class Action Waiver is Ambiguous. ... 24

CONCLUSION ... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aldana v. GameStop, Inc.*, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .......... 1

*Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (2001) .......... 4, 5, 6, 7, 11

*Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 19

*Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83 (2000) .......... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 17

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 10

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013) .......... 11

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015) .......... 17

*Barclays Bank of New York, N.A. v. Heady Electric Co., Inc.*, 174 A.D.2d 963 (N.Y. App. Div. 1991) .......... 16

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) .......... 4, 5, 6, 12, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 17

*Besage v. Custom Decorators, Inc.*, 2009 WL 330934 (N.D. Cal. Feb. 10, 2009) .......... 4

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 22

*Camilo v. Uber Techs., Inc.*, 2018 WL 2464507 (S.D.N.Y. May 31, 2018) .......... 14

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) .......... 17, 18

*Castellanos v. Raymours Furniture Co*.,
291 F. Supp. 3d 294 (E.D.N.Y. 2018) .......... 15

*Chan v. Chancelor*,
2011 WL 5925281 (S.D. Cal. 2011) .......... 23

*Cooper v. Slice Tech., Inc*.,
2017 WL 4071373 (N.D. Cal. Sept. 14, 2017) .......... 6

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) .......... 10, 14

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996) .......... 8

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) .......... 5, 6, 11, 13, 14

*Earth Island Inst. v. Wheeler*,
464 F. Supp. 3d 1138 (N.D. Cal. 2020) .......... 1

*Ellis v. Cartoon Network, Inc*.,
803 F.3d 1251 (11th Cir. 2025) .......... 18

*Fan v. NBA Props. Inc*.,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 19, 20

*Fisher v. DCH Temecula Imports LLC*,
187 Cal. App. 4th 601 (2010) .......... 10

*Flores v. Transamerica HomeFirst, Inc.*,
93 Cal. App. 4th 846 (2001) .......... 9

*Gemini Techs., Inc. v. Smith & Wesson Corp.*,
931 F.3d 911 (9th Cir. 2019) .......... 4

*Grafton Partners v. Superior Court*,
36 Cal. 4th 944 (2005) .......... 16

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) .......... 18

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .......... 23

*Hughes Elecs. Corp. v. Citibank Delaware*,
120 Cal. App. 4th 251 (2004) ....... 24

*In re 2TheMart.com, Inc. Sec. Litig.*,
114 F. Supp. 2d 955 (C.D. Cal. 2000) ....... 23

*In re Cty. of Orange*,
784 F.3d 520 (9th Cir. 2015) ....... 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....... 21, 22

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....... 21

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ....... 20

*In re Vizio, Inc., Consumer Priv. Litig.*,
2017 WL 11420284 (C.D. Cal. July 25, 2017) ....... 21

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ....... 24

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ....... 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....... 21

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ....... 23

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590,n.6 (C.D. Cal. Nov. 27, 2023) ....... 18

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....... 22, 23

*Lang v. Skytap, Inc.*,
347 F. Supp. 3d 420 (N.D. Cal. 2018) ....... 4, 7, 8, 9

*Lange v. Monster Energy Co.*,
46 Cal. App. 5th 436 (2020) ....... 9

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ....... 18

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 17

*Li v. Amazon.com Services LLC*,
2023 WL 8720669 (N.D. Cal. Dec. 18, 2023) .......... 6

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) .......... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 17

*M.K. v. Google LLC*,
2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .......... 18

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .......... 4, 11, 13

*Madden v. Midland Funding, LLC*,
237 F. Supp. 3d 130 (S.D.N.Y. 2017) .......... 11, 12

*Martinez v. D2C, LLC*,
2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) .......... 19

*Martinez v. Master Protection Corp.*,
118 Cal. App. 4th 107 (2004) .......... 9

*Ministers & Missionaries Ben. Bd. v. Snow*,
45 N.E.3d 917 (N.Y 2015) .......... 11

*Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth Inc.*,
473 U.S. 614 (1985) .......... 5

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .......... 22

*Moreno v. Baca*,
2000 WL 33356835 (C.D.Cal.2000) .......... 24

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .......... 7

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......... 15

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal. 4th 459 (1992) .......... 24

*Oceanside 84, Ltd. v. Fidelity Bank*,
56 Cal. App. 4th 1441 (1997) ........ 25

*Perry v. AT&T Mobility LLC*,
2011 WL 4080625 n.4 (N.D. Cal. Sept. 12, 2011) ........ 5

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (2017) ........ 20

*Pinela v. Neiman Marcus Group, Inc.*,
238 Cal. App. 4th 227 (2015) ........ 24

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
352 F. Supp. 2d 1048 (N.D. Cal. 2004) ........ 23

*Ranieri v. Bell Atl. Mobile*,
304 A.D.2d 353 (N.Y. App. Div. 2003) ........ 15

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 22

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 21

*Richeson v. Helal*,
158 Cal. App. 4th 268 (2007) ........ 25

*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*,
8 Cal. App. 5th 1 (2017) ........ 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 17

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) ........ 13

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) ........ 22

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 21

*Smith v. Paul Green Sch. of Rock Music Franchising, LLC*,
2008 WL 2037721 (C.D. Cal. May 5, 2008) ........ 7

*Stability Sols., LLC v. Medacta USA, Inc.*,
2023 WL 350546 (N.D. Cal. Jan. 20, 2023) ........ 3, 4, 8

*Stephen v. Enterprise Rent-A-Car*,
235 Cal. App. 3d 806 (1991) .......... 8

*Szetela v. Discover Bank*,
97 Cal. App. 4th 1094 (2002) .......... 10

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
83 F. Supp. 3d 855 (N.D. Cal. 2015) .......... 5

*Terwilliger v. Terwilliger*,
206 F.3d 240 (2d Cir. 2000) .......... 11

*United Teachers of Oakland v. Oakland Unified Sch. Dist.*,
75 Cal. App. 3d 322 (1977) .......... 25

*Verdugo v. Alliantgroup, L.P.*,
237 Cal. App. 4th 141 (2015) .......... 4, 7, 8

*Victoria v. Superior Court*,
40 Cal. 3d 734 (1985) .......... 25

*Von Nothdurft v. Steck*,
227 Cal. App. 4th 524 (2014) .......... 9

*Walter v. Hughes Commc'ns, Inc.*,
682 F. Supp. 2d 1031 (N.D. Cal. 2010) .......... 7

*Waters v. Advent Prod. Dev., Inc.*,
2008 WL 7683231 (S.D. Cal. June 26, 2008) .......... 15

*Welsbach Elec. Corp v. MasTec N. Am., Inc.*,
859 N.E.2d 498 (N.Y. 2006) .......... 11

*Willis Re Inc. v. Herriott*,
550 F. Supp. 3d 68 (S.D.N.Y 2021) .......... 11

*Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*,
32 Cal. App. 4th 1511 (1995) .......... 7, 8

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... 18

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 21

**Statutes**

18 U.S.C. § 2710(a)(1) .......... 17

18 U.S.C. § 2710(b)(1) .......... 1

Cal. Civ. Code § 1654 .......... 25

Cal. Civ. Code § 1668 .......... 10

Cal. Civ. Code § 1670.5 .......... 8

Cal. Civ. Code § 1751 .......... 7, 13

Cal. Civ. Code § 1780(d) .......... 13

Cal. Civ. Code § 1781(a)(1) .......... 13

Cal. Civ. Code § 1781(b) .......... 13

Cal. Civ. Code § 1799.3(a) .......... 20

Cal. Civ. Code § 1799.3 .......... 1, 20, 21

Cal. Const. art. I, § 16 .......... 8, 16

Cal. Code Civ. Proc. § 631(f) .......... 16

N.Y. Gen. Bus. Law ("NYGBL") § 349 .......... 13

NYGBL. § 1780(a)(4) .......... 13

NYGBL § 349(h) .......... 13

**Rules**

Fed. R. Civ. Proc. 12(b)(6) .......... 1

Fed. R. Civ. Proc. 12(b)(1) .......... 1

## INTRODUCTION

Before the Court are three motions filed by Defendant MLB Advanced Media, L.P. ("MLBAM"). First, MLBAM moves to transfer this case to the Southern District of New York. MLBAM's motion to transfer should be denied because Defendant seeks to force Plaintiffs—all California residents—to litigate individual claims in New York under New York law, which would effectively deprive Plaintiffs of unwaivable rights.

Second, in the alternative, MLBAM moves to dismiss this case under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. MLBAM's motion to dimiss should be denied because the Amended Complaint ("Complaint") sufficiently alleges that MLBAM unlawfully disclosed Plaintiffs' personally identifiable information ("PII") in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(b)(1), as well as California Civil Code section 1799.3, the California Invasion of Privacy Act ("CIPA"), the California Unfair Competition Law ("UCL"), and the California Consumer Legal Remedies Act ("CLRA"). Specifically, the Complaint sufficiently alleges all elements of a VPPA claim: that Plaintiffs are "subscribers" of MLBAM's video service and that MLBAM discloses a subscriber's identity (in the form of a Facebook ID), the video material's identity, and the connection between them (the Meta Pixel disclosed to Meta that the subscriber requested or obtained the specific video materials). *See Aldana v. GameStop, Inc.*, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024). It also sufficiently allefes that MLBAM acted "knowingly" when it installed the Meta Pixel, fully aware of its functions. *See generally* Compl.

Finally, in the further alternative, MLBAM moved to strike the Complaint's class action allegations. This motion to strike should be denied because it is premature at this stage, because Defendant's class action waiver is unenforceable under California law, and because the class action waiver is ambiguous.

## BACKGROUND

The VPPA provides for damages when "[a] video tape service provider…knowingly discloses to any person, [PII] concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Plaintiffs allege the following facts, which are taken as true for the purposes of a motion to dismiss. *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141 (N.D. Cal. 2020).

MLBAM developed, owns, and operates the Website. Compl. ¶ 2. The Website offers an array of video materials. *Id.* ¶ 1. MLBAM's goods and services are streaming video materials delivered via its Website. *Id.* ¶ 21.

MLBAM monetizes its Website, in part, be collecting and disclosing subscriber information to Meta. *Id.* ¶ 29. The Website uses a code analytics tool called the "Meta Pixel," which tracks the actions of subscribers, such as the pages or videos they view. *Id.* ¶¶ 30–33. When a Facebook account is created, a corresponding Facebook ID ("FID") number is also created. *Id.* ¶ 27. A user's Facebook profile can be identified and viewed using an FID. *Id.* ¶ 28.

When an individual requests or obtains video materials from the Website, the individual's FID and the video materials requested or obtained are simultaneously disclosed to Meta via the Pixel. *Id.* ¶ 36.

Plaintiffs subscribed to the Website by creating an account, which involves providing MLBAM with their names, dates of birth, and email addresses. *Id.* ¶ 24. Plaintiffs also paid subscriptions fees. *Id.* ¶¶ 24; 185. Plaintiffs accessed their Website accounts to request or obtain video materials from MLBAM. *See,e.g.*, *id.* ¶ 43.

Each Plaintiffs also has a Facebook account, which he or she is perpetually logged into. *See, e.g.*, *id.* ¶ 44. Each Plaintiff's Facebook account contains his or her name. *See, e.g.*, *id.* ¶ 45. Each time Plaintiffs requested or obtained video materials, MLBAM disclosed his or her FID, as well as the video materials requested or obtained. MLBAM installed the Pixel knowing that it discloses PII to Meta. *See, e.g.*, *id.* ¶ 46. Plaintiffs allege that MLBAM violated the VPPA, and related California state consumer law, each time it knowingly disclosed their FID and the video materials they requested or obtained.

As subscribers to the Website, Plaintiffs were presented with MLBAM's TOUm which states in relevant part:

> Any dispute or claim arising out of or relating to this Agreement, or your use of any MLB Digital Property… ("Dispute") will be resolved through binding arbitration.
> …
> Dispute, however, **does not include** any dispute or claim related to…the alleged violation of your privacy rights or interests whether based in contract, tort, statute, fraud, misrepresentation, common law, rule, regulation, or any other legal theory, including but not limited to: (i) claims under the Video Privacy Protection Act and corresponding state video privacy laws; (ii) claims under the Federal Wiretap Act and other federal and state wiretapping laws; or (iii) any other alleged violation of

> your privacy rights or interests that is based on the use of technology, including, but not limited to, any code, software, software development kit, and/or application programming interface, on any MLB Digital Property or use of that technology to allegedly intercept, record, collect, possess, procure, or disclose any information, including but not limited to personally identifiable information and video viewing behavior (without concession that any such claims, including those under video privacy or wiretapping laws, apply to any MLB Entity) (collectively, "Non-Arbitrable Claims").
>
> …
>
> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. … NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.
>
> …
>
> TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU AND MLB WAIVE THE RIGHT TO A JURY TRIAL.

Compl. Ex. A. § 11 (emphasis in original). The TOU also includes a forum selection clause, presenting subscribers with a non-negotiable contract to litigate any claims in "the federal and state courts in New York County, New York" and to have their claims "governed by, and construed and interpreted in accordance with, the laws of the State of New York, without regard to conflict of laws principles." Compl. Ex. A § 12.

Plaintiffs assert, and Defendant does not dispute, that the claims at issue are "Non-Arbitrable Claims" under the TOU and therefore must be brought in a court of law. Plaintiffs further assert that the TOUs class action waiver and jury waiver are contrary to important public policy in the state of California—where Plaintiffs reside, where Defendant conducts business, and where this action was filed—and that the forum selection clause and related choice of law provision are unenforceable.

## <u>ARGUMENT</u>

## I. MOTION TO TRANSFER VENUE

### A. Legal Standard

#### 1. The Enforceability of the Forum Selection Clause is Analyzed Under Both State and Federal Law.

"Evaluating forum-selection clauses can involve both state and federal law." *Stability Sols., LLC v. Medacta USA, Inc.*, No. 22-cv-07412-LB, 2023 WL 350546, at *4 (N.D. Cal. Jan. 20, 2023). "Federal law governs the interpretation and enforcement of forum-selection clauses…. State law governs contract

formation." *Id.* (citations omitted).

Under federal law, "a contractual forum-selection clause is 'unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914 (9th Cir. 2019) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Under California law, contractual forum selection clauses are favored "so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable." *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 11 (2001). Whether a forum selection clause is reasonable is conditioned on whether "the place chosen [has] some logical nexus to one of the parties or the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement." *Id.* at 12.

**2. The Enforceability of a Forum Selection Clause is Considered in Tandem with the Choice of Law Clause.**

While perhaps "the forum selection clause…is alone not unreasonable. …The related choice of law provision…requires Plaintiff to give up California claims." *Lang*, 347 F. Supp. 3d 420, 430 (N.D. Cal. 2018). In this case, "[t]he forum selection clause and choice of law provision must be read jointly because they are 'inextricably bound up' together." *Id.* at 429 (quoting *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 154 (2015)).

While some courts in this district have found that a party challenging a forum selection clause may not base its challenge on choice of law analysis, the circumstances of this case are easily distinguishable because Plaintiffs allege that the combined venue and law would infringe unwaivable rights. *See, e.g.*, *Besage v. Custom Decorators, Inc.*, No. CV08-05463, 2009 WL 330934, *4 (N.D. Cal. Feb. 10, 2009). The most instructive opinion issued by a court in this district on how to evaluate whether enforcement of a forum selection clause violates California public is in *Bayol*, where plaintiffs brought a putative class action challenging Zipcar's fees under California consumer protection statutes, including the CLRA. *Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014). Zipcar moved to transfer venue, pointing to the forum selection clause in its membership agreement, which designated Massachusetts state or federal courts as the forum for disputes. *Id*. at *1. The membership agreement also contained a choice of law provision designating Massachusetts state law as applicable to any

disputes. *Id*. Plaintiffs argued that the forum selection clause was unenforceable because enforcement would "contravene a strong public policy of the forum in which suit is brought." *Id*. at *2 (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009)).

The *Bayol* court framed the significance of whether the court should consider the likely effect of the Membership Agreement's choice of law clause when determining the enforceability of the forum selection clause as follows:

> If the Court cannot or should not consider the choice of law clause at this time, as Zipcar argues, then it cannot determine whether enforcement of the forum selection clause would contravene California policy—the questions would be independent, because in theory, Plaintiffs could bring their California claims in federal court in Massachusetts. However, if the Court can and should consider the choice of law clause now, the questions become inseparably entwined—if transferring venue would also likely lead to the application of Massachusetts law, there would be a greater chance that enforcement of the forum selection clause will contravene California policy.

*Bayol*, 2014 WL 4793935, at *2. The court concluded that "it is clear that the Court *can* consider the combined effect of forum selection and choice of law clauses." *Id*. (citing *Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth Inc.*, 473 U.S. 614, 637 n.19 (1985)). The court also pointed to two Ninth Circuit cases that held a forum selection clause was invalid where "together with the choice of law provision, [it would] effect a waiver of statutory remedies provided by the CLRA." *Id.* (citing *Doe 1*, 552 F.3d at 1084 (following *Am. Online, Inc. v. Superior Court of Alameda County* (*Mendoza*), 90 Cal. App. 4th 1, 15 (2001))); *see also Perry v. AT&T Mobility LLC*, No. C 11-01488, 2011 WL 4080625 at *4 n.4 (N.D. Cal. Sept. 12, 2011) ("Defendants argue that the Court may not consider the choice of law clause, but they do not discuss the Supreme Court and Ninth Circuit law that clearly permits the Court to do so.").

To determine whether the court *should* consider the combined effect of choice of law clauses, the court noted a split among the in-district decisions, one "best explained by looking to whether the right at issue was waivable, and where it was not, by further evaluating the likelihood that the unwaivable right would be upheld in the transferee forum." *Bayol*, 2014 WL 4793935, at *3. The two cases Defendant cites as examples of the court not considering the effects of choice of law provisions are easily distinguishable from this case because they do not involve any assertion of unwaivable rights. *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855 (N.D. Cal. 2015) (involving

a breach of contract dispute); *Cooper v. Slice Tech., Inc*., 2017 WL 4071373 (N.D. Cal. Sept. 14, 2017) (plaintiffs alleged violations of federal and state privacy acts but did not allege CLRA provisions, nor was there a class or jury waiver at issue that would have deprived plaintiffs those rights upon application of New York law). As noted in *Bayol*, when no unwaivable rights are asserted, the courts in this district decline to consider choice of law questions unless the public policy issue specifically related to venue. *Bayol*, 2014 WL 4793935, at *2. However, the *Bayol* court found that "certain of the rights at issue" were not waivable, specifically that "the fact that CLRA remedies are at stake is an especially powerful consideration, given the Ninth Circuit's clear holding in *Doe 1* that a choice of law clause cannot waive the unwaivable rights provided by the CLRA." *Id.* at 3; *see also Doe 1*, 552 F.3d at 1082–84 (finding the forum selection clause unenforceable as plaintiffs would be unable to invoke protections of the class action mechanism or the CLRA in transferee court). Thus, the *Bayol* court found it appropriate to consider whether the federal court in Massachusetts would likely apply California state law in determining whether Zipcar's forum selection clause would contravene strong California public policy. *Bayol*, 2014 WL 4793935, at *4. Another court in this district recently applied the *Bayol* analysis in a case where plaintiffs asserted unwaivable rights under the CLRA, and proceeded to analyze the likelihood of whether the federal court of the transferee forum would be likely to enforce those rights. *Li v. Amazon.com Services LLC*, 2023 WL 8720669 at *5 (N.D. Cal. Dec. 18, 2023).

Defendant claims that, following transfer, Plaintiffs can present the public policy argument of infringement of unwaivable rights to the Southern District of New York. Def's Br. at 15. But this line of thinking was directly criticized by the *Bayol* court, which wrote that "[p]laintiffs should not be subject to this Court's paternalistic determination that they would be fine under the protections of another state; rather, they are entitled to the specific protections provided by the legislature and courts of California." *Bayol*, 2014 WL 4793935, at *4.

Given California's strong public policy against consumer class action waivers, waivers of consumer rights under the CLRA, and waivers to a jury, all of which are at stake in this case, it is imperative that this court consider the effect of the choice of law provision in tandem with the forum selection clause to determine whether the forum selection clause is enforceable.

**3. The Party Seeking Enforcement of a Forum Selection Clause Has the Burden to Show That a Plaintiff's Unwaivable Rights Will Not Be Diminished.**

Because Plaintiffs bring claims under the CLRA, which are unwaivable, *see* Cal. Civ. Code § 1751, the burden of proving that the forum selection clause should be enforced shifts to Defendant. *See Verdugo*, 237 Cal. App. 4th at 149–51.

"[U]nder California law, the burden of proving not only the reasonableness and fairness of the [agreement], but also that the CLRA's anti-waiver provision is not violated, rests with [defendant]." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006); *see also Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 429–30 (N.D. Cal. 2018) ("While the burden of proving why a contractual provision should not be enforced typically is borne by the party opposing enforcement, the burden shifts when the claims at issue are based on unwaivable rights created by the California legislature." (citing *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 149–51(2015))); *Smith v. Paul Green Sch. of Rock Music Franchising, LLC*, 2008 WL 2037721 at *4, n.8 (C.D. Cal. May 5, 2008) (finding that the burden shifts to the defendant when enforcement of a forum selection clause *risks* undermining nonwaivable statutory rights); *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1038 (N.D. Cal. 2010) (citing *Mendoza*, 90 Cal. App. 4th at 11). When this burden is shifted, the party seeking to enforce a forum selection clause with a related choice of law clause "bears the burden to show litigating the claims in the contractually-designated forum 'will not *diminish in any way* the substantive rights afforded…under California law.'" *Verdugo*, 237 Cal. App. 4th at 147 (quoting *Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 Cal. App. 4th 1511, 1520–24 (1995) (emphasis added)).

Shifting the burden to the defendant "places higher scrutiny on the forum selection clause out of concern that a defendant is attempting to circumvent unwaivable California rights." *Lang*, 347 F. Supp. 3d at 430. Circumvention of unwaivable California rights is precisely the goal of Defendant. Defendant's TOU mandates arbitration in the case of *every* dispute *except* privacy claims. TOU §§ 11–12. Unlike with other disputes, Defendant does not want to arbitrate privacy claims specifically, but then crafted a TOU containing a class action waiver and a jury trial waiver, as well as a forum selection clause designating New York federal or state courts as the forum for all privacy disputes, with a choice of law provision designating New York law. *Id.* Defendant understands the key to avoiding practicable

adjudication of privacy claims is to avoid litigation under California law (which provides for unwaivable rights under the CLRA and stringent restrictions on class action and jury waivers). By choosing New York, a waiver-friendly forum, as the venue and applicable law, Defendant hopes to force its consumers, including California residents, to litigate their claims as individuals. California courts recognize that prohibition of proceeding as a class in actions like this is essentially a "death knell" that makes further proceedings in the action impractical. *See Stephen v. Enterprise Rent-A-Car*, 235 Cal. App. 3d 806, 811 (1991). This court should not reward Defendant's attempt to circumvent California law and strip California plaintiffs of their unwaivable rights. Instead, this court should place high scrutiny on the "party seeking to enforce the forum selection clause with a related choice of law clause" by having that party bear "the burden to show litigating the claims in the contractually-designated forum 'will not *diminish in any way* the substantive rights afforded... under California law.'" *Lang* 347 F. Supp. 3d at 430 (citing *Verdugo,* 237 Cal. App. 4th at 187 (quoting *Wimsatt v. Beverly Hills Weight Loss Clinics Int'l., Inc*., 32 Cal. App 4th 1511, 1520–24 (1995) (emphasis added)).

Defendant has not shown that Plaintiffs' substantive rights under California law would not be diminished if the forum selection clause were enforced. In fact, Defendant specifically maintains that "Plaintiffs *cannot* sustain their California claims." Def.'s Br. at 23 (emphasis added). Defendant also maintains that Plaintiffs' class allegations be stricken, pointing to a class action waiver that directly circumvents the California Constitution. Def.'s Br. At 29; Cal. Const. art. I, § 16.

Because Defendant fails to meet its burden, the motion to transfer should be denied.

### B. MLBAM's Motion to Transfer Venue Must Be Denied

#### 1. The Forum Selection Clause Is Unconscionable Under California Law.

Even if the burden rests with Plaintiffs, the forum selection clause remains unenforceable.

"[S]tate law governs the validity of a forum-selection clause, just like any other contract clause." *Stability Sols.*, 2023 WL 350546, at *4. Where a contract clause is unconscionable, it is invalid. *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "California law requires that contracts be analyzed for unconscionability 'at the time [they are] made.'" *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 430 (N.D. Cal. 2018) (quoting Cal. Civ. Code § 1670.5). Because the forum selection clause at issue required Plaintiffs, at the time the agreement was made, "to relinquish unwaivable rights

under California law," it is unconscionable and unenforceable. *Lang*, 347 F. Supp. 3d at 430.

California courts analyze contract provisions for both procedural and substantive unconscionability. *See Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83 (2000). While both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract clause, "they need not be present in the same degree." *Id.* at 114.

Here, Plaintiffs were presented with a contract of adhesion—"i.e., a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). "A finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Id.*; *see also* *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (quoting *Armendariz*, 24 Cal. 4th at 113) (internal quotations omitted)); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 114 (2004) (rejecting the notion that the availability of substitute employment, goods, or services in the marketplace can alone defeat a claim of procedural unconscionability).

While procedural responsibility "addresses the circumstances of contract negotiation and formation," substantive unconscionability "pertains to the fairness of the agreement's actual terms." *Von Nothdurft v. Steck*, 227 Cal. App. 4th 524, 535 (2014). Because the forum selection clause and related choice of law provision required Plaintiffs to "relinquish unwaivable rights under California law,"—specifically, the right to jury, the right to class action litigation, and statutory rights under the CLRA—the forum selection clause is substantively unconscionable and unenforceable.

*First*, while jury trial waivers are "inherent in arbitration agreements," Plaintiffs claims are explicitly outside the scope of the arbitration agreement contained in the TOU. *See Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 452 (2020). Instead, Defendant seeks to impose, through a contract of adhesion, a jury trial waiver applied to a claim or controversy brought in a court of law "is not susceptible to any interpretation *other* than as an unconscionable predispute jury waiver." *Id.* (emphasis in original).

*Second*, in considering the conscionability of a class action ban in a contract of adhesion, the

California Court of Appeal stated that "[a]lthough styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact [defendant], because…companies typically do not sue their customers in class-action lawsuits." *Szetela v. Discover Bank*, 97 Cal App. 4th 1094, 1101 (2002). While the California Supreme Court clarified that not all class action waivers "are necessarily unconscionable," such waivers are unconscionable where the waiver "is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages," and where "the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money" and thus, "the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005) (quoting Cal. Civ. Code § 1668). While *Discover Bank* was rather abrogated by the United States Supreme Court, it was notably done so on the grounds that it was preempted by the Federal Arbitration Act ("FAA"). *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). In the wake of *Concepcion*, however, the *Discover Bank* rule, to the extent it exists *outside* the context of an arbitration agreement, remains intact. Here, of course, Defendant specifically exempted Plaintiffs claims from the arbitration agreement—meaning that the FAA is irrelevant and inapplicable and thus, the *Discover Bank* rule remains in full force.

*Third*, through the related application of New York law, the forum selection clause aims to force Plaintiffs to waive their rights under the CLRA—a waiver which is "contrary to public policy" and "unenforceable and void." The unwaivable protections under the CLRA include the ability to bring a class action. *See Fisher v. DCH Temecula Imports LLC*, 187 Cal. App. 4th 601, 619 (2010) ("[T]he clear language of the CLRA does not allow a consumer to waive the provisions of the CLRA in advance, including the right to bring a class action.").

Because the forum selection clause and related choice of law provision effectuate the unconscionable waivers of the right to a jury trial, the right to class action litigation, and protections under the CLRA, the forum selection clause and choice of law provision are substantively unconscionable.

### 2. The Forum Selection Clause is Also Unenforceable Under Federal Law.

Additionally, the forum selection clause is unenforceable under federal law. "A forum selection clause is presumptively valid" but is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute *or by judicial decision*.'" *Bremen*, 407 U.S. at 17, 15. As observed by the Ninth Circuit, "California has declared 'by judicial decision'" that a similar forum selection clause "contravenes a strong public policy of California—as applied to California residents who brought claims under California statutory consumer law." *Doe 1*, 552 F.3d at 1083 (citing *Mendoza*, 90 Cal. App. 4th 1 (2001)). Enforcement of the combined forum selection clause and choice of law provision would almost certainly lead to a scenario where this case is decided by a New York court under New York law. In that event, enforcement would contravene strong California public policy by diminishing the rights of California consumers in three aspects: 1. The CLRA's anti-waiver provision 2. California's strong support for consumer class actions and 3. California's strong support for jury trial.

#### i. Enforcement of the combined forum selection clause and choice of law provision would likely result in an application of New York law by a New York court.

Where a case is transferred to a new federal district court pursuant to a valid forum selection clause, the choice of law rules of the transferee venue control, "a factor that in some circumstances may affect public-interest considerations." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64–65 (2013). Thus, if this case were to be transferred to the Southern District of New York, New York choice of law rules would apply. While Plaintiffs cannot be certain whether the transferee court would enforce the choice of law provision, Defendant strongly contends that the court would apply New York law, citing a string of Second Circuit decisions upholding New York choice of law provisions. Def.'s Br. at 23 (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000)); *Willis Re Inc. v. Herriott* 550 F. Supp. 3d 68, 69 (S.D.N.Y 2021); *Ministers & Missionaries Ben. Bd. v. Snow*, 45 N.E.3d 917, 923 (N.Y 2015)). New York courts will generally "enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or to the transaction." *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017) (quoting *Welsbach Elec. Corp v.*

*MasTec N. Am., Inc.*, 859 N.E.2d 498 (N.Y. 2006)). The chosen state has a reasonable relationship to the dispute if one of the contracting party's principal places of business is in the selected state. *See id.* Plaintiffs maintain that venue is most proper in California given that current Plaintiffs are California residents and every potential nationwide class member's data is sold to Meta, a California corporation. Despite the case's strong connections to California, the Southern District of New York's application of New York law's incredibly permissive "reasonable relationship" standard may lead to an enforcement of the choice of law clause solely because Defendant is headquartered in the same state as the chosen law.

Where the transferee court's laws lead to a conclusion that the transferee court would be unlikely to apply California state law in violation of unwaivable consumer rights and remedies, the court should consider the likely application of New York law in determining whether enforcement would contravene strong California public policy. *See Bayol*, 2014 WL 4793935, at *4. The Second Circuit laws cited by both Defendant and Plaintiff lead to a conclusion that a transferee court would be likely to apply New York state law. Thus, in this court's determination of whether enforcement would contravene strong California public policy, it is appropriate to compare the effects of the transferee court's application of New York law with this court's application of California law.

**ii. A New York Court Applying New York Consumer Law Would Violate the CLRA's Anti-Waiver Provision.**

Plaintiffs' consumer rights would overall be much worse off should the case be transferred to New York federal court applying New York law. Even if consumers were to be better off under New York laws, that does not change that application in this case would infringe upon unwaivable consumers remedies and California public policy in support of jury trials. The *Bayol* court, acknowledging that the transferee state (Massachusetts) had robust consumer protection laws, perhaps even "greater than the CLRA in certain respects," still found the forum selection clause to be unenforceable because Plaintiffs would lose certain substantive consumer protection under California law, such as liquidated damages, right to a jury trial, no restrictions on attorney's fees, a damages floor, and mandatory class certification. *Bayol*, 2014 WL 4793935, at *4. It would be inappropriate for the rights of California consumers to be punted off to adjudication under New York courts likely applying New York law just because New

York, like Massachusetts, is not the nation's most oppressive state when it comes to consumer rights. "Plaintiffs should not be subject to this Court's paternalistic determination that they would be fine under the protections of another state; rather, they are entitled to the specific protections provided by the legislature and courts of California." *Id.*

California and Ninth Circuit precedent is clear that transferring this case to New York and applying New York law would contravene strong California public policy. As already noted, a state's public policy can be "declared by statute or by judicial decision." *Doe 1*, F.3d at 1083 (quoting *Bremen*, 407 U.S. at 15). The CLRA plainly declares that "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." *Id.* (quoting Cal. Civ. Code § 1751). Additionally, in *Doe 1*, the Ninth Circuit made clear that California's public policy was "against consumer class action waivers and waivers of consumer rights under the CLRA that California public policy applies to California residents bringing class action claims under California consumer law." *Id.* at 1084. Moreover, unlike with the CLRA, the New York equivalent consumer law does not contain any anti-waiver provision or class protection. *Compare* Cal. Civ. Code § 1751–81, *with* N.Y. Gen. Bus. Law ("NYGBL") § 349.

California consumers would lose the protection of several CLRA protections should this case be transferred to a New York court applying New York law. For example, under the CLRA, class certification is mandatory in certain circumstances, all of which are present here. Cal. Civ. Code § 1781(b). In contrast, NYGBL contains no such mandatory class certification provision. "[C]lass actions are among the provisions of the CLRA that may not be waived." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 924 (2015). Moreover, the CLRA also contains a floor of $1,000 in statutory damages for all class action damages awards while NYGBL remains silent. Cal. Civ. Code § 1781(a)(1). The CLRA also provides for punitive damages, which is not mentioned in the NYGBL. § 1780(a)(4). Finally, the CLRA provides for mandatory costs and attorney's fees be given to a prevailing plaintiff, while NYGBL only provides that the court "may award" reasonable attorney's fees to a prevailing plaintiff. Cal. Civ. Code § 1780(d); NYGBL § 349(h).

As two of the panel members wrote in *Doe 1*, "any purported waiver of the rights of a California consumer is unenforceable." 552 F.3d at 1085 (Nelson and Reinhardt, JJ., concurring). California's

CLRA is an example of the state's comprehensive protection of Californian consumers' rights that go above and beyond that of other states. The anti-waiver provision in the CLRA is a clear expression by the California legislature that the protections of the CLRA cannot be waived. California courts have consistently ruled against attempts by companies to sidestep consumer protections under the CLRA by rejecting forum selection clauses and choice of law provisions that would shift legal disputes to more business-friendly states. These decisions demonstrate the judiciary's commitment to upholding California's strong public policy aimed at protecting consumers.

**iii. A New York Court Applying New York Law Would Violate California's Strong Public Policy Against Class Action Waivers.**

The right for California consumers to bring class actions is the strong established public policy of this state, even beyond the mandatory class provisions under the CLRA. The Ninth Circuit, in finding the forum selection clause of Virginia state courts unenforceable, clearly wrote that *Mendoza* "found a California public policy against consumer class action waivers...." *Doe 1*, 552 F.3d at 1084 (citing *Mendoza*, 90 Cal. App. 4th). Moreover, the *Discover Bank* court held that even when a plaintiff does not plead a CLRA cause of action, at least some class action waivers in consumer contracts are still unconscionable under California law. *Discover Bank v. Superior Court,* 36 Cal. 4th 148, 161 (2011). The court found that "when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" *Id.* at 162–63.

By moving to strike Plaintiffs' class allegations under the class action waiver of the TOU, Defendant demonstrates that transfer to New York and application of New York law would likely result in a waiver of Plaintiffs' rights to class actions, which is a direct abrogation of California public policy. Def.'s Br. at 29. Defendant cites to numerous New York federal court cases that uphold class action waivers as consistent with New York law and public policy. *Id.* (citing *Camilo v. Uber Techs., Inc.*, No.

17 CIV. 9508, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (finding class-action waiver "valid and enforceable"); *Castellanos v. Raymours Furniture Co*., 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (enforcing class-action waiver). Indeed, "courts applying New York law [] have uniformly held that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.,* 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009). Nor is "a contractual proscription against class actions…violative of public policy" under New York law. *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354–55 (N.Y. App. Div. 2003)).

Even if this court were to find that the class action waiver is not independently a violation of California public policy, that determination is not needed to find the forum selection clause otherwise unenforceable when it comes to the waiver of protections under the CLRA or right to a jury trial. For example, the Southern District of California had found that while the transferee state law did in fact allow for class actions, "enforcement of the forum selection clause would contravene a strong public policy of California" because the transferee state law did not offer remedies extensive with the CLRA. *Waters v. Advent Prod. Dev., Inc*., No. 07CV2089BTMLSP, 2008 WL 7683231 at *6–7 (S.D. Cal. June 26, 2008). Thus, while Plaintiffs argue that there are three strong public policies at stake, Plaintiff need only convince this court that one strong public policy was abrogated in order for this court to find the forum selection clause unenforceable.

**iv. A New York Court Applying New York Law Would Violate California's Unwaivable Right to a Jury Trial.**

Another right that Plaintiffs could lose under New York law would be trial by jury. California law and public policy reflects a strong fundamental policy of preserving jury trials for civil litigants. The right to a jury trial is uncontroversially unwaivable under California law. *See In re Cty. of Orange*, 784 F.3d 520, 523 (9th Cir. 2015) ("Under California…law, parties to a contract cannot waive their right to a jury trial before a dispute commences, and any contract provision seeking to effect such a waiver is unenforceable unless expressly authorized by statute."); *see also Rincon EV Realty LLC v. CP III Rincon Towers, Inc*., 8 Cal. App. 5th 1, 17 (2017) (finding that even though plaintiffs resided in New York and disputed loans were made and disbursed in New York, the New York choice-of-law provisions in the contracts were unenforceable under California law as applied to the jury waiver provisions because the

waiver violated fundamental California public policy). As the California Constitution declares, "Trial by jury is an **inviolate right** and shall be secured to all… In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." Cal. Const. art. I, §16 (emphasis added). The California Supreme Court has held that under the applicable statute, there are extremely narrow scenarios in which a party can waive trial by jury, and all are only applicable *after* a lawsuit has been filed. *Grafton Partners v. Superior Court*, 36 Cal. 4th 944, 950, 956–958, 961, 967 (2005). In contrast, under New York law, pre-dispute contractual jury trial waivers generally are enforceable. *Barclays Bank of New York, N.A. v. Heady Electric Co., Inc.*, 174 A.D.2d 963, 964 (N.Y. App. Div. 1991). The California Constitution clearly provides in the strongest terms for protection of the right to trial by jury and leaves up to the California legislature to describe the ways in which that right may be waived. It is imperative that this court not allow Defendant's forum selection clause and choice of law provision to make a mockery of our state's Constitution and supersede the power so purposefully vested in our state's legislature. The California legislature has spoken clearly through California Code of Civil Procedure section 631(f), which allows a party to waive jury trial in six instances,[1] none of which include a pre-trial waiver contained in a private contract's TOU. Plaintiffs' right to a jury trial is unwaivable and a clear manifestation of California public policy; thus, this court should find the forum selection clause that abrogates that unwaivable right and policy unenforceable.

Since enforcement of the forum selection clause would contravene three of California's strong public policies, including consumer protections and remedies of the CLRA, protections against class action waivers, and the right to a jury trial, this court should find the forum selection clause unenforceable. Defendant fails to meet its burden of proof that enforcement would not diminish in any way the rights of California plaintiffs; instead, Defendant openly advocates for the application of less

[1] (1) By failing to appear at the trial.
(2) By written consent filed with the clerk or judge.
(3) By oral consent, in open court, entered in the minutes.
(4) By failing to announce that a jury is required, at the time the cause is first set for trial, if it is set upon notice or stipulation, or within five days after notice of setting if it is set without notice or stipulation.
(5) By failing to timely pay the fee described in subdivision (b), unless another party on the same side of the case has paid that fee.
(6) By failing to deposit with the clerk or judge, at the beginning of the second and each succeeding day's session, the sum provided in subdivision (e).

protective New York law that would strip Plaintiffs of the aforementioned protections of their home state. Thus, the motion to transfer should be denied.

## II. MOTION TO DISMISS

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but rather, a plaintiff must allege "only enough facts to state a claim for relief that is plausible of its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the "jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, the attack is facial, a court resolves the matter "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). To establish jurisdiction, a plaintiff must plead an "injury in fact" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### B. MLBAM's MOTION TO DISMISS MUST BE DENIED

#### 1. Plaintiffs' Complaint States a Claim Under the VPPA.

Plaintiffs have pleaded sufficient facts to state a plausible claim for relief and to establish standing under the VPPA.

##### i. Plaintiffs have sufficiently pleaded that they are "consumers."

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). A "subscriber" is not a separately defined term under the VPPA, but courts have defined a VPPA "subscriber" as a person: (1) who has established a subscriber relationship with a video tape service provider; and (2) whose subscription is connected to the video tape service provider's video materials. *See, e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662,

669–71 (S.D.N.Y. 2015).

A "subscription" requires "some sort of ongoing commitment or relationship between the user and the entity." *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023). "Relevant considerations include whether the relationship between the plaintiff and the video tape service provider involves payment, registration, establishment of an account, provision of personal information, receipt or delivery of goods or services, expressed association, and/or access to restricted content." *M.K. v. Google LLC*, 2023 WL 4937287, at *4 (N.D. Cal. Aug. 1, 2023) (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2025)). However, "[n]o single factor is dispositive." *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023).

Courts require that a subscription be to a video tape service provider's video materials, not just any goods or services such as newsletters or emails not related to video content. *See, e.g.*, *Carter*, 670 F. Supp. 3d at 99. However, courts have "not create[d] a bright-line, categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription. This is just one factor…, and it is not dispositive or outcome determinative on its own." *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *5 n.6 (C.D. Cal. Nov. 27, 2023). In fact, courts have consistently held that an individual with a subscription to video materials, even when free, constitutes a "consumer" under the VPPA. *See, e.g.*, *Ellis v. Cartoon Network*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("[P]ayment is not a necessary element of subscription."); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487, 489 (1st Cir. 2016) ("[I]f the term 'subscriber' required some sore of monetary payment, it would be rendered superfluous by the two terms preceding it. …While [plaintiff] paid no money, access was not free of a commitment to provide consideration in the form of [personal] information."); *Harris v. Pub. Broadcasting Serv.*, 662 F. Supp. 3d 1327 (N.D. Ga. 2023) (finding that a plaintiff who "signed up for a free account with Pbs.org" was a "consumer" under the VPPA); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) (finding that plaintiff was a consumer where "she allege[d] that she exchanged her email address to receive the WebMD e-newsletter and that she also created her own WebMD account").

As such, registration for a free account on MLB.com does make one a "subscriber" under the VPPA. But even if it did not, Plaintiffs here alleged that they "paid…subscription fees." Compl. ¶ 185.

As noted in the complaint, MLB's paid subscription service "provides 'an *expanded* library of *premium content*, including documentaries, classic programs and the World Series Films." Compl. ¶ 21 (emphasis added).

Because Plaintiffs established "some sort of ongoing commitment or relationship" between themselves and MLB, Plaintiffs adequately pleaded that they are "consumers" under the VPPA.

**ii. Plaintiffs have sufficiently pled that MLBAM unlawfully disclosed their PII to a third party.**

Defendants content that Plaintiffs' VPPA claim fails because "they do not allege an actionable disclosure of *their own* information," but rather "a theory about how [the] website and the Facebook pixel works." *See* Def.'s Br. at 20 (emphasis added). This is incorrect.

Plaintiffs, instead, allege that "[*e*]*ach time* Plaintiff [ ] requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff['s] FID and the specific video materials or services…requested or obtained from Defendant to Meta via the Pixel." Am. Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126 (emphasis added). Importantly, there is "no requirement" that a plaintiff "disclose the title of the specific videos" requested or obtained. *Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024); *see also Martinez v. D2C, LLC*, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (finding "no support" for "requiring that [a plaintiff] identify the actual titles that they allege were disclosed"); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (finding sufficient that plaintiff alleged that defendant disclosed "information about what videos he has watched").

Moreover, Plaintiffs do not allege a "general theory" about how the Pixel *could* work. *See* Def.'s Br. at 21. They instead allege facts about how the Pixel *does* work. *See, e.g.*, Am. Compl. ¶ 36 ("When someone requests or obtains specific prerecorded audio visual material or services on the Website, the specific audio visual material or service and the viewer's FID *are* simultaneously disclosed to Meta via the Pixel." (emphasis added)). Plaintiffs' allegations are not akin to Defendant's analogy of a Blockbuster office manager being "capable" of "pulling an individual's rental history" and "sending it to the New York Times." *See* Def.'s Br. at 20–21. Rather, the allegations are analogous to Blockbuster, hypothetically, pulling an individual's rental history and sending it to the New York Times *as a matter*

*of course* from which it does not deviate.

Each Plaintiff here alleged that he or she "regularly requested or obtained specific video materials or services from the Website," and that "*each time*" he or she did so, that information was transmitted to Meta via the Pixel, along with his or her FID. *See, e.g.*, Am. Compl. ¶¶ 46, 41 (emphasis added). In doing so, Plaintiffs have sufficiently pleaded a cognizable injury as required for standing. *Cf. In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* in jury, *i.e.*, the unlawful disclosure of legally protected information."); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 ("The structure and purpose of the VPPA supports the conclusion that it provides actionable rights. …We conclude that violation of the VPPA constitutes a concrete harm.").

**2. Plaintiffs Sufficiently Pleaded a Claim Under § 1799.3.**

Defendant asserts that Plaintiffs claim under § 1799.3 fails because they "do not allege that they ever paid for video content." A plain reading of the Complaint demonstrates otherwise: "*Plaintiffs paid* more in subscription fees than they would have had they been previously aware of Defendant's unfair and unlawful business practice." Am. Compl. ¶ 185 (emphasis added).

While Plaintiffs contest that a paid subscription is even required under the statute,[2] Plaintiffs are aware of no case in which a court has required a plaintiff to state the specific dollar amount expended on their subscriptions at the pleading stages to state a claim under section 1799.3. *But cf. Fan v. NBA Props. Inc.*, No. 23-cv-05069, 2024 WL 1297643 (denying defendant's motion to dismiss 1799.3 claim); Am. Compl., *Fan v. NBA Props. Inc.*, No. 23-cv-05069 (N.D. Cal. Oct. 6, 2023), ECF No. 9 (pleading simply that "Plaintiff Fan purchased a NBA Top Shot video clip").

Because Plaintiffs are not required to plead that the video materials were received in exchange

[2] Defendant cites *Martin v. Meredith Corp.* for the contention that a plaintiff must pay for video content in order to state a claim under section 1799.3. 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023) ("The term 'sales or rental services' indicates that the statute applies only to entities providing video materials to customers in exchange for money."). However, a careful reading of both *Martin*, in which a federal court in New York interpreted a California statute, and the statute itself demonstrates that the term "sales or rental services" is contained in the provision describing which *entities* are subject to the prohibition of disclosure under section 1799.3. Defendant, which does engage in "providing video recording sales or rental services" through its paid MLB.TV service, is prohibited from disclosing "the contents of *any record*, *including* sales or rental information…without [ ] written consent." Cal. Civ. Code § 1799.3(a) (emphasis added).

for money and because, even if they were required to do so, Plaintiffs sufficiently did, Plaintiffs have sufficiently pleaded a claim under section 1799.3.

### 3. Plaintiffs Sufficiently Pleaded a Claim Under CIPA

"[T]he California Supreme Court has…emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 358–61 (1985); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 199 (2021) ("The interpretation of section 632.7 we adopt is better aligned with the[ ] aims and declarations [of CIPA] than a narrower interpretation would be.")). Defendant's narrow interpretations of "contents" and "communications" protected under CIPA are at odds with both this principle and case law.

Defendant argues that Plaintiffs allege the disclosure of "exactly the kinds of browsing-history data that *Yoon* [*v. Lululemon USA*, *Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021)] and other decisions have found not to violate CIPA," namely an "IP address, [ ] location at the time of the [website] visit, [ ] browser type, and the operating system on [the] device." Def.'s Br. at 25–26. But this argument fails for several reasons.

First, while "basic identification and address information" is not "content," Plaintiffs are not alleging disclosure of such general "record information." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). Rather, Plaintiffs allege that Defendant disclosed the precise video materials or services Plaintiffs requested or obtained. *See id.* ("[B]ecause full-string URLs concern the 'substantive, purport, or meaning of a communication,' these transmissions likely constitute 'contents."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("[P]ost-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user."); *In re Vizio, Inc., Consumer Priv. Litig.*, 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) ("When watching a program through a connected device or streaming service, the 'intended message conveyed by the communication' is the program that the consumer is

watching.").[3]

Moreover, courts have held that a user's website activity can constitute communication for purposes of CIPA. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("[Plaintiff] requested information from [defendant] by clicking on items of interest; [defendant] responded by supplying that information. This series of requests and responses—whether online or over the phone—is communication."); *Smith v. Google, LLC*, --- F. Supp. 3d. ---, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024) (finding an allegation that data collected by defendant's site 'may include email addresses, data on users' income, filing status, refund amounts, buttons that were clicked, and year of return' was enough to state a claim under CIPA); *see also In re Google*, 806 F.3d at 139 ("Because the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content' within the meaning of the [federal] Wiretap Act.").

Because the information disclosed by Defendant constitutes a protected "communication" under CIPA, and because this information was transmitted to a third party (Meta), Plaintiffs have sufficiently stated a claim under CIPA.

**4. Plaintiffs Sufficiently Pleaded a Claim Under the UCL**

Defendants primarily argue that Plaintiffs' UCL claim fails because disclosure of private information does not constitute economic loss. Plaintiffs at no point alleged that it does. Instead, Plaintiffs alleged that their economic loss resulted in the payment of subscription fees that they would otherwise have been unwilling to pay had they been aware of Defendant's practice of disclosing their information. *See* Compl. ¶ 185. Such an economic injury has been routinely recognized by California courts. *See, e.g.*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 334 (2011) ("[A] buyer forced to pay more than he or she would have is harmed at the moment of purchase."); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 554–55 (2022) (collecting cases). That Plaintiffs did not allege the exact amount paid or lost is not fatal to their claim at the pleading stage. *See Kwikset*, 51 Cal. 4th at 330

[3] While these cases addressed the federal Wiretap Act, rather than CIPA, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

("Because the issue here is only the threshold matter of standing, not whether and how much to award in restitution, a specific measure of the amount of this loss is not required.").

**5. Plaintiffs Sufficiently Pleaded a Claim Under the CLRA**

Contrary to Defendant's assertions, Plaintiffs make specific allegations in pleading their CLRA claims, including, for example, that Defendant "falsely represent[ed] that Defendant does not unlawfully disclose consumers' PII." *See* Compl. ¶ 195; *see also Klein v. Chevron U.S.A., Inc.,* 202 Cal. App. 4th 1342, 1382–83 (2012) (finding that Plaintiffs stated a claim under the CLRA where "[t]he allegations underlying plaintiffs' CLRA claim [were] essentially identical to those pleaded in support of their UCL claim").

Moreover, Defendant's arguments that Plaintiffs are not "consumers" under the CLRA, that Plaintiffs "never allege any losses," and that Plaintiffs "never allege facts supporting that MLBAM sold them any particular good or service" fail for reasons already discussed. *See* Def.'s Br. at 27–28. These arguments all hinge on Plaintiffs' purported failure to allege any payment or economic loss, but Plaintiffs plainly alleged that they "paid more in subscription fees than they would have had they been previously aware" of Defendant's practice of disclosing their PII. Compl. ¶ 185. "Because the [CLRA's] 'any damage' standard includes even minor pecuniary damage, …any plaintiff who has standing under the UCL's… 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (quoting *Klein,* 202 Cal. App. 4th at 1375); *see also Kwikset*, 51 Cal. 4th at 335–36 ("[T]he standards for establishing standing…and eligibility for restitution…are wholly distinct.").

## III. MOTION TO STRIKE

In considering a motion a to strike, a court must view the pleadings in a light most favorable to the nonmoving party. *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Motions to strike are disfavored and will not be granted unless the "matter to be stricken could have *no possible bearing* on the subject matter of the litigation." *Chan v. Chancelor,* 2011 WL 5925281, at *2 (S.D. Cal. 2011) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.,* 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004)) (emphasis added).

### A. The Motion to Strike is Premature.

First, Defendant's motion to strike should be denied as premature. "Generally, courts review class allegations through a motion for class certification." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) (citing *Moreno v. Baca*, 2000 WL 33356835, *2 (C.D.Cal.2000) (finding defendants' motion to strike class allegations premature because no motion for class certification was before the court)).

### B. The Class Action Waiver is Unenforceable Under California Law.

However, even if this were an appropriate stage in the proceedings to consider a motion to strike, the motion should be denied because the class action waiver is unenforceable under California law. "The proper analytical approach" to determine the enforceability of a choice of law provision when in California "is to determine whether (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) any other reasonable basis exists for the parties' choice of law." *Hughes Elecs. Corp. v. Citibank Delaware*, 120 Cal. App. 4th 251, 258 (2004) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992)). "If either test is met, the choice of law provision will be enforced *unless the chosen state's law is contrary to a fundamental public policy of California*." *Id.* (emphasis added); *see also Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 249 (2015) ("[A]n agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy ... [or] result in an evasion of ... a statute of the forum protecting its citizens." (internal quotations and citation omitted)).

As previously discussed, the New York choice of law provision here violates strong California public policies in that it seeks to waive Plaintiffs' right to a jury trial, right to class action litigation, and substantive claims under the CLRA—all of which are unwaivable.

Because California law applies and because a class action waiver is unenforceable under California law, Plaintiffs class allegations cannot be stricken.

### C. The Class Action Waiver is Ambiguous.

In the alternative, the class allegations cannot be stricken because the TOU, as it relates to the class action waiver, contains contradictory terms and is therefore ambiguous.

"Whether [a] contract is reasonably susceptible to a party's interpretation can be determined

from the language of the contract itself." *Oceanside 84, Ltd. v. Fidelity Bank*, 56 Cal. App. 4th 1441, 1448 (1997) (citing *United Teachers of Oakland v. Oakland Unified Sch. Dist.*, 75 Cal. App. 3d 322, 330 (1977)). "If a contract is capable of two different reasonable interpretations, the contract is ambiguous." *Oceanside 84*, 56 Cal. App. 4th at 1448.

Here the class waiver in the TOU contains terms that are inherently contradictory, creating ambiguity. On one hand, the TOU attempts to *waive* the parties' rights to bring their claims as a class action. On the other, the TOU *retains* the parties' rights to participate in a class-wide settlement. A class action settlement, of course, may only be brought about through a class action complaint. MLBAM cannot practically bar a party from ever pleading a case that would effectuate a settlement that MLBAM at the same time contemplates. The Court should therefore find that the class action waiver is ambiguous. *See Richeson v. Helal*, 158 Cal. App. 4th 268, 276–77 (2007) ("If an instrument is capable of two different reasonable interpretations, the instrument is ambiguous.").

Where a contract is ambiguous, a court "must provide an interpretation that will make the instrument lawful, operative, definite, reasonable, and capable of being carried into effect, and must avoid an interpretations that would make it harsh, unjust or inequitable." *Id.* at 277. "A well-settled maxim states the general rule that ambiguities in a form contract are resolved against the drafter." 1448 (citing Cal. Civ. Code § 1654; *Victoria v. Superior Court*, 40 Cal. 3d 734, 739 (1985)).

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should deny MLB's Motion to Transfer Venue. Additionally, this Court should deny MLB's Motion to Dismiss. In the alternative, Plaintiffs request leave to amend. Finally, this Court should deny MLB's Motion to Strike.

Respectfully submitted,

ZIMMERMAN REED LLP

Date: October 15, 2024 By: <u>/s/ Molly Billion</u>

Caleb Marker
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781
Email: caleb.marker@zimmreed.com

ZIMMERMAN REED LLP

Jeffrey J. Harrington (*Pro hac vice*)
80 South 8th Street, 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
Email: jeffrey.harrington@zimmreed.com

Molly Billion (*Pro hac vice*)
80 South 8th Street, 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
Email: molly.billion@zimmreed.com

*Attorneys for Petitioners*